UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21711-CIV-MOORE/MCALILEY

CHRISTOPHER GARCIA,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

      Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Pending before the Court is Plaintiff's Motion for Summary Judgment [DE 21], and Defendant's Motion for Summary Judgment. [DE 22]. This matter is fully briefed. [DE 24]. For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment, denies Defendant's Motion and reverses the decision of the Commissioner and remands this case for further proceedings.

### I. Procedural History

On August 23, 2010, Plaintiff filed an application with the Social Security Administration for child survivor benefits following the presumed death of his father and wage earner, Ernesto Garcia. Tr. 57-58.[1] Mr. Garcia disappeared in January 2002, shortly before Plaintiff's seventh birthday, and has not been heard from since. The

---

[1] Citations to the transcript of proceedings before the Social Security Administration, which was filed at DE 15, are in the form "Tr. [#]."

Commissioner denied Plaintiff's application initially, and on reconsideration, having found that Plaintiff did not provide sufficient proof of Mr. Garcia's death.  Tr. 59-61, 77-79.  Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), which took place on March 5, 2013.  Tr. 258-282.[2]  Plaintiff's mother testified, as did his paternal aunt.  *Id.*

On May 30, 2013, the ALJ issued a written decision in which he found Plaintiff is not entitled to Title II child survivor benefits.  Tr. 11-23. The Appeals Council denied Plaintiff's request for review of the ALJ'S decision, making it the final decision of the Commissioner.  Tr. 4-9.  Plaintiff now asks this Court to reverse the Commissioner's decision and remand the matter to the ALJ for a new hearing.  [DE 21, p. 10].

II.     **Proceedings before the Commission**

A.      **Relevant Evidence**

The Court reviewed the entire administrative record and summarizes here only the evidence relevant to the issues raised in the parties' respective motions for summary judgment.

Before his disappearance, Ernesto Garcia worked driving a tractor trailer from Miami to a Texas border town that was loaded with automobiles that he sold in Mexico. Tr. 266-67.  His trips typically lasted a week or two.  Tr. 267.  Mr. Garcia left Miami on such a trip around January 19, 2002.  Tr. 268.  Several days into that trip Mr. Garcia told

---

[2] On March 23, 2012, the ALJ held a hearing but did not take any testimony or address the merits of Plaintiff's claim.  Tr. 283-88.  Instead, he agreed to continue the hearing to allow the parties to gather additional evidence regarding the whereabouts of Mr. Garcia.  Tr. 286-87

Plaintiff's mother that he would be home in time for the Plaintiff's 7th birthday on January 28, 2002.  Tr. 36, 266.

Mr. Garcia did not attend his son's birthday party as planned and has had no further contact with his family since that time.  Tr. 269, 273.  At the time of his disappearance Plaintiff's mother and his paternal uncle traveled to Texas and Mexico to search for Mr. Garcia.  Tr. 269.  Plaintiff's uncle had also worked as a truck driver and was familiar with the parking lots and lodging Mr. Garcia used on his trips.  Tr. 269-270.  Plaintiff's mother and uncle found Mr. Garcia's truck abandoned in the lot and his clothing neatly packed in a suitcase in his hotel room, but could not locate Mr. Garcia.  Tr. 269-270, 277.  There were no signs of foul play.  Tr. 277.  Mr. Garcia typically carried his personal identifying documents on his person and these documents were never found.  *Id.*

The Plaintiff's mother and uncle spoke with the hotel staff, who recalled Mr. Garcia saying he would return to Miami in time to celebrate his son's birthday.  Tr. 271.  Hotel staff said they did not see Mr. Garcia thereafter.  *Id.*  Plaintiff's mother and uncle reported Mr. Garcia's disappearance to the Mexican authorities, but were unaware of what investigation, if any, the police conducted.  They also published a photo of Mr. Garcia in a local Mexican newspaper along with an article about his disappearance.  Tr. 143, 271.  The article said that Mr. Garcia was last seen at a local hotel and bar and provided telephone numbers for Plaintiff's mother and a Mexican police lieutenant.  Tr. 143.  There is no evidence that any readers contacted them with information regarding

Mr. Garcia's whereabouts.  Plaintiff's mother and paternal aunt testified that neither they nor Mr. Garcia's parents have heard from him since January 2002, and they believe him to be dead.  Tr. 29, 273, 279.  Following Mr. Garcia's disappearance, the bank repossessed his truck, apparently because Mr. Garcia stopped making the required payments.  Tr. 275**.**

While this matter was pending before the Commissioner, the parties learned that an individual with Mr. Garcia's name and Social Security number was incarcerated in a Texas prison in 2005.  Tr. 88.  Records provided by the Texas Department of Criminal Justice reflect that that individual, having the same date of birth as Mr. Garcia, was sentenced in June 2005 to 180 days of incarceration.  Tr. 156, 158-59.  These documents contain the inmate's emergency contact information and criminal history.  Tr. 156.  They also contain personal identifying information, such as his height (5 feet 6 inches), weight (162 pounds) and place of birth (Texas), as well as a photograph of the inmate and a copy of his fingerprints.  Tr. 156-57.

Plaintiff's mother and paternal aunt testified that the man identified in the Texas documents was not Mr. Garcia.  In sworn statements they said Mr. Garcia was six feet tall and weighed more than 200 pounds.  Tr. 169-73.  They also testified at the hearing that the photograph of the Texas prisoner did not resemble Mr. Garcia.  Tr. 169-73, 272-73.  The record also contains a copy of Mr. Garcia's passport, which documents that his height (184 meters or 6 feet) and place of birth (Matanzas, Cuba) are different than those of the Texas inmate.  Tr. 144.

### B.      The ALJ's decision

In his May 30, 2013 decision, the ALJ concluded that Plaintiff is not entitled to child survivor benefits.  Tr. 11-23.  Specifically, the ALJ found Plaintiff had not provided "best evidence" or other convincing evidence of his father's death as contemplated by 20 C.F.R. § 404.720.  Tr. 22.   The ALJ also found that Plaintiff did not establish a presumption of his father's death as permitted by 20 C.F.R. § 404.721(b).  *Id*.  The ALJ further found that had Plaintiff established that presumption, it would have been rebutted by evidence of the Texas inmate, jailed in 2005, who had the same name, date of birth and social security number as Mr. Garcia.  *Id*.

## III.    Analysis

The Court's review of the ALJ's decision "is limited to a determination of whether it is supported by substantial evidence and to whether correct legal standards were applied." *Williams v. Sullivan*, No. 89-127-VAL, 1991 WL 325554 at *1 (M.D. Ga. Nov. 15, 1991) (citing *Walker v. Brown*, 826 F.2d 996, 999 (11th Cir. 1987).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citation omitted).  The Court must determine whether the ALJ applied the correct legal standard and whether substantial evidence supports his findings of fact.  *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984).  In making this determination, the court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the

[Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). After its review, this Court may enter a judgment affirming, modifying, or reversing the decision of the ALJ, with or without remand. *Perez v. Comm'r Soc. Security*, Case No. 6:06-CV-1648-ORL-19KRS, 2008 WL 191036, *5 (M.D. Fla.  Jan.22, 2008); 42 U.S.C. §405(g).

Plaintiff argues that substantial evidence does not support the ALJ's findings that (i) Plaintiff failed to establish a presumption of his father's death and (ii) even if Plaintiff established that presumption, that the Commissioner rebutted the presumption.[3]  For her part, the Commissioner argues that substantial evidence does support the ALJ's decision and therefore summary judgment should be entered for Defendant.  For the reasons explained below, I agree with Plaintiff and remand this matter to the Commissioner for further proceedings.

A.     Presumption of Death

Social Security regulations set forth the manner in which a claimant may prove a wager earner's death.  First, it identifies "preferred evidence of death" which includes death certificates or statements of funeral directors, attending physicians or others with personal knowledge of a person's death.  20 C.F.R. § 404.720.  The ALJ found that Plaintiff did not present preferred evidence of Mr. Garcia's death, and Plaintiff does not dispute this finding.

---

[3] Plaintiff also argues that remand is warranted because the ALJ failed to prepare and issue an exhibit list. [DE 21, p. 7].  It is unnecessary for the Court to determine whether this error requires remand given its other rulings.

Alternatively, Social Security regulations allow the Commissioner to presume a wage earner's death if the claimant provides "signed statements by those in a position to know and other records which show that the person has been absent from his or her residence and has not been heard from for at least 7 years."  20 C.F.R. § 404.721(b).[4] That presumption may be rebutted by evidence that "establishes that the person is still alive or explains the individual's absence in a manner consistent with continued life rather than death."  20 C.F.R. § 404.722.

The ALJ found that Plaintiff did not provide evidence that supports a presumption that Mr. Garcia died.  Going further, the ALJ found that even if Plaintiff's evidence allowed the presumption, it was rebutted "by evidence of an individual's incarceration in a Texas correctional facility in 2005 with the same name, Social Security number and birth date as the father/wage earner – evidence of the father's continued life rather than death."  Tr. 22.  Plaintiff disputes these findings.  Accordingly, the question before this Court is whether, on this record as a whole, there is substantial evidence to support these two findings.  I conclude that there is not.

As noted, section 404.721(b) calls for "signed statements by those in a position to know and other records" that show the wage earner has not been heard from for at least seven years.  The Commissioner correctly notes that Plaintiff did not provide signed

---

[4] Section 404.721(a) sets forth another kind of proof that will lead to a presumption of death, but this applies only to wager earners who were federal employees and therefore is inapplicable to Mr. Garcia.

statements to this effect.[5]  Plaintiff's mother and paternal aunt, however, did provide this

information by oral testimony before the ALJ.  Specifically, they testified under oath at

the March 2013 hearing that neither they nor Mr. Garcia's parents had heard from Mr.

Garcia since his January 2002 disappearance.  Tr. 273, 279.  These witnesses certainly

were in a position to know that Mr. Garcia had been absent from his residence and not

heard from since his disappearance.  Their testimony is as reliable, if not more so, than

signed statements to the same effect, as they testified under oath and were subject to

questioning by the ALJ.[6]  It would simply be form over substance for the Commissioner

and this Court to decline to find a presumption of death because of the absence of signed

statements when the very information required in those written statements was provided

in the form of testimony from sworn and qualified witnesses.

Section 404.721(b) also requires Plaintiff to provide "other records" that show that

Mr. Garcia has been absent from his residence and not heard from for at least seven

years.  The regulations do not provide any specificity as to the kind and quantity of these

"other records."  Plaintiff does not identify any records he provided the Commissioner.

The absence of documents, however, could be reasonable here. Plaintiff's paternal aunt

testified that Mr. Garcia did not own any property, real estate or vehicles other than his

tractor trailer truck.  Tr. 274-75.  She further testified that the bank repossessed Mr.

Garcia's truck after his disappearance, presumably because he stopped making the

---

[5] The signed statements Plaintiff provided deny that Mr. Garcia is the Texas inmate, but they do not recite that Mr. Garcia had not been heard from for more than seven years.  Tr. 169-73.

[6] Notably, 20 C.F.R. 404.721(b) does not require that the signed statements be sworn.

required monthly payments, Tr. 275, a circumstance consistent with Mr. Garcia's continued absence and possible death.

The ALJ did not explore whether Plaintiff's family has documents that would support a finding that Mr. Garcia had been absent for more than seven years and, if they did not, whether the lack of documents is reasonable under the circumstances. The ALJ asked only whether Plaintiff's family instituted court proceedings to declare Mr. Garcia dead and whether Mr. Garcia owned property; the answer was no on both counts. Tr. 273-276. The ALJ should have inquired further to determine whether "other records" exist or whether it is reasonable to excuse Plaintiff from producing such documents. For example, the ALJ could have asked whether Mr. Garcia maintained a credit card, bank account or a cell phone in his name, and if so, whether it is possible to retrieve those records so many years later to see the status of those accounts after his disappearance. The ALJ "has an obligation to develop a full and fair record, even if the claimant is represented by counsel." *Nation v. Commissioner of Social Security*, 153 Fed. Appx. 597, 598 (11th Cir. 2005). I find that the ALJ did not meet this obligation.

The ALJ's failure to fully develop the record was not a harmless error because it appears that Plaintiff can establish a presumption of death. The Fifth Circuit Court of Appeals found such a presumption on a record that suggested the wage earner had deliberately left his family. In *Wages v. Schweiker*, the wage earner was a "penurious man who was experiencing domestic problems." *Wages*, 659 F.2d 59, 61 (5th Cir. Oct. 15, 1981). Shortly before his disappearance, the wage earner was court ordered to pay

financial support to his disabled wife and children, he withdrew funds from his bank account and left certain household items with his mother. *Id*. at 61. Although the wage earner disappeared under suspicious circumstances, the Court found that:

> While his character and the issuance of a support order may have caused [the wage earner] to leave, it does not explain his continued absence for the past twelve years. [The wage earner] had no prior history of disappearance or pattern of abandonment….He was close to his mother, and there is no evidence that he did not care for his children, yet he has not contacted them since his disappearance. [The wage earner] was a highly trained, well-paid engineer … yet since his disappearance he has not asked his former employers for a reference or his college for a transcript. The law supplies an explanation for such unusual behavior after seven years of absence: the presumption of death.

*Id*. at 61.

The record in this case would appear to offer more support to a presumption of death. It would appear Mr. Garcia was close to his family and there is no evidence that he deliberately disappeared or was motivated to do so.

In sum, the ALJ's finding that Plaintiff failed to establish a presumption of death is not supported by substantial evidence. The Court finds that the sworn testimony of Plaintiff's family fulfilled the purpose of "signed statements" required by 20 C.F.R. § 404.721(b). On remand, the ALJ shall inquire further whether Plaintiff has satisfied the "other records" requirement of the regulation.

It bears mentioning that the ALJ devoted a significant portion of his decision to criticizing the efforts of Plaintiff's family to locate Mr. Garcia. Tr. 20-22. Evidently the ALJ believed Plaintiff's family did not adequately investigate Mr. Garcia's

disappearance.  It is not clear, though, how this criticism is relevant to determining whether Plaintiff established a presumption of death, or the rebuttal of that presumption. From this record it appears that Plaintiff's family was of limited means and sophistication.  It may be that Mr. Garcia's family did not know how to better investigate his disappearance in Mexico.  On remand, if the ALJ relies upon the quality of the family's investigation he should develop the record more fully on this point and clearly state how this is relevant to the analysis required by § 404.721.

B.      Rebuttal of a Presumption of Death

Once the claimant establishes a presumption of death, the burden shifts to the Commissioner to rebut it by presenting evidence "that establishes that the person is still alive or explains the individual's absence in a manner consistent with continued life rather than death."  20 C.F.R. § 404.722.  The Commissioner's burden "requires more than mere conjecture as to possible explanations."  *Autrey v. Harris*, 639 F.2d 1233, 1235 (5th Cir. March 16, 1981);[7] *Grossman v. Bowen*, 680 F.Supp. 570, 577 (S.D.N.Y. 1988) ("To be credited, the Secretary's rebuttal evidence must be more than speculative; it must constitute substantial evidence that directly points to a rational explanation other than death for the wage earner's disappearance.").  The Commissioner "must prove facts which do – not merely may – rationally explain the anomaly of the disappearance in a manner consistent with continued life."  *Brewester v. Sullivan*, 972 F.2d 898, 902 (8th

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

Cir. 1992) (quotation marks and citation omitted).  If the Commissioner satisfies her burden of production, the presumption is rebutted and ceases to exist.  *Green v. Shalala*, 51 F.3d 96, 100-01 (7th Cir. 1995).

If the presumption is rebutted, "[t]he factfinder must then weigh all the evidence, recognizing that the burden of persuasion on the existence of the presumed fact remains with the party originally invoking the presumption."  *Id.* at 101.

With this standard in mind, I find that substantial evidence does not support the ALJ's finding that the Commissioner rebutted the presumption of death with evidence of Mr. Garcia's continued life.  The ALJ relied on Texas Department of Criminal Justice records of an individual with Mr. Garcia's name, Social Security number and date of birth who was incarcerated in a Texas correctional facility in 2005, approximately three years after Mr. Garcia's disappearance.  Tr.  22.

There is substantial record evidence that the Texas inmate was not Mr. Garcia. Mr. Garcia's passport states that he was 6 feet tall and was born in Matanzas, Cuba.  The Texas records document that the inmate was considerably shorter – 5 foot 6 inches – and he was born in Texas.  Tr. 144, 156-57.  With their sworn statements Plaintiff's mother and paternal aunt confirmed Mr. Garcia's height of six feet.  Tr. 169, 171.  The ALJ did not acknowledge this important difference between the descriptors of the Texas inmate and Mr. Garcia, and the Court does not know whether the ALJ noticed these discrepancies.

The Texas records cast further doubt that they describe Mr. Garcia.  The Texas inmate had a criminal history of nine arrests as an adult.  Tr. 156.  There is no evidence that Mr. Garcia was ever arrested or involved in criminal activity.  As already noted, Plaintiff's mother and aunt submitted sworn statements that the photo of the Texas inmate is not a photo of Mr. Garcia.  Tr. 169, 171.  The ALJ noted that he could not tell whether the photos of the inmate and Mr. Garcia were of the same person.  Tr. 19.

The Texas records are not adequate rebuttal evidence for another reason.  The Texas inmate was confined in June 2005 and sentenced to 180 days incarceration with credit for 22 days of time served.  Tr. 156, 159-60.  As such, the inmate presumably was released in approximately November 2005, more than seven years before the administrative hearing.  The record lacks any information regarding Mr. Garcia's whereabouts since the release of the Texas inmate.

"Where there has been an initial disappearance, followed by evidence of continued life, and then silence for more than seven years, the courts have held consistently that the seven year period begins to run from the last time the wage earner was known to be alive…."  *Newman v. Gardner*, 263 F.Supp. 58, 60 (E.D.N.Y. 1967).  As another court aptly stated, "a person who flees his problems does not thereby achieve immortality."  *Penrose v. Heckler*, 566 F.Supp. 301, 304 (D. Nev. 1983).  Thus, even if one assumes that the Texas inmate was Mr. Garcia, the Commissioner still failed to meet her burden of proof because she did not provide any evidence establishing that Mr. Garcia was alive, or

explaining his absence in a manner consistent with continued life, during the nearly seven and a half year period between the inmate's release and the administrative hearing.

The disappearance of Mr. Garcia and his identification documents in 2002 raises the concrete possibility that his identity documents were stolen and that his name, date of birth and social security number were fraudulently used by the Texas inmate. The fact that all other identifying information about the Texas inmate does not describe Mr. Garcia increases the likelihood that this is so. The ALJ did not consider this possibility or, if he did, did not explain why he rejected it. Mr. Garcia's fingerprints are likely available from United Stated immigration records or other sources. The Commissioner presumably can acquire those fingerprints and compare them to the fingerprints associated with the Texas inmate. The Commissioner could also inquire whether the woman listed on the Texas inmate's emergency contact documents was indeed Mr. Garcia's mother. Tr. 156.

On this record, the assertion that Mr. Garcia is alive because he and the Texas inmate are the same individual is conjecture, not a rational explanation for Mr. Garcia's continued absence. The Commissioner has the burden to rebut the presumption of death and there is not substantial evidence in this record that she has done so.

On remand, after fully developing the record as discussed above, the ALJ should re-evaluate whether Plaintiff has established a presumption of Mr. Garcia's death and, if so, whether the Commissioner has rebutted the presumption. The ALJ should include a

complete and accurate list of exhibits with his decision in accordance with the requirements set forth in Commissioner's Hearing, Appeals, and Litigation Law Manual.

## IV.    Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment [DE 21], is **GRANTED**, Defendant's Motion for Summary Judgment [DE 22], is **DENIED**, the decision of the Commissioner that Plaintiff is not entitled to Title II child survivor benefits is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**DONE AND ORDERED** in chambers in Miami, Florida this 29th day of August, 2016.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE


Copies to:
Counsel of record